UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ENCOMPASS HEALTH
REHABILITATION HOSPITAL
OF SARASOTA, LLC, et al.,

    Plaintiffs,

v.                                    Case No: 8:22-cv-2573-KKM-UAM

XAVIER BECERRA,

    Defendant.
_____

## ORDER

Medicare denied coverage to Encompass Health Rehabilitation Hospital of Sarasota, LLC, and Encompass Health Rehabilitation Hospital of Largo, LLC, ("Encompass") for the medical services that Encompass provided to sixty-three patients. In each case, an administrative law judge (ALJ) determined that the patient's medical condition did not justify the type of care offered by Encompass. Encompass requested review of the ALJs' decisions, but the Medicare Appeals Council affirmed after finding that Encompass's requests did not adequately explain its reasons for appealing. *See* 42 C.F.R. § 405.1112(b) (requiring appellants to explain their disagreement with an ALJ's

decision). Encompass now asks this Court to remand the cases to the agency. *See* Pl. MSJ (Doc. 53) at 97. For the reasons given below, the Court instead affirms.

## I. BACKGROUND

From 2012 to 2017, Encompass provided various inpatient rehabilitation facility (IRF) services to the sixty-three patients at issue in this case. Pl. MSJ at 8; Def. MSJ (Doc. 61) at 5. "Compared to other rehabilitation settings, IRFs maintain a high level of physician supervision in order to provide intensive rehabilitation therapy services." *Clarke v. Healthsouth Corp.*, No. 8:14-cv-778, 2021 WL 149265, at *1 (M.D. Fla. Jan. 15, 2021) (quotation omitted), *aff'd*, No. 21-10421, 2021 WL 6102260 (11th Cir. Dec. 23, 2021). Therefore, the Centers for Medicare and Medicaid Services (CMS) takes care to discern whether IRF services are "reasonable and necessary" and thus reimbursable. 42 U.S.C. § 1395y(a)(1)(A).

During the relevant time period, CMS regulations specified that IRF services are only reasonable and necessary when there is a reasonable expectation that the patient's condition:

> (i) Requires the active and ongoing therapeutic intervention of multiple therapy disciplines (physical therapy, occupational therapy, speech-language pathology, or prosthetics/orthotics therapy), one of which must be physical or occupational therapy.
> (ii) Generally requires and can reasonably be expected to actively participate in, and benefit from, an intensive rehabilitation therapy program. Under

current industry standards, this intensive rehabilitation therapy program generally consists of at least 3 hours of therapy (physical therapy, occupational therapy, speech-language pathology, or prosthetics/orthotics therapy) per day at least 5 days per week. . . . Benefit from this intensive rehabilitation therapy program is demonstrated by measurable improvement that will be of practical value to the patient in improving the patient's functional capacity or adaptation to impairments. The required therapy treatments must begin within 36 hours from midnight of the day of admission to the IRF.

(iii) Is sufficiently stable at the time of admission to the IRF to be able to actively participate in the intensive rehabilitation therapy program that is described in [the previous] paragraph . . .

(iv) Requires physician supervision by a rehabilitation physician, defined as a licensed physician with specialized training and experience in inpatient rehabilitation. The requirement for medical supervision means that the rehabilitation physician must conduct face-to-face visits with the patient at least 3 days per week throughout the patient's stay in the IRF to assess the patient both medically and functionally, as well as to modify the course of treatment as needed to maximize the patient's capacity to benefit from the rehabilitation process.

42 C.F.R. § 412.622(a)(3) (2010). Collectively, these four requirements are known as the beneficiary eligibility criteria.

CMS regulations also imposed other limitations on IRF coverage. These included technical documentation criteria, which oblige the party seeking reimbursement to include several types of medical records in the patient's file. *Id.* § 412.622(a)(4). Further, "the patient must require an interdisciplinary team approach to care" consisting of weekly team

meetings between a rehabilitation physician, a registered nurse, a social worker or case manager, and a therapist from each therapy discipline involved in treating the patient. *See id.* § 412.622(a)(5). If coverage is denied, either the hospital or the patient is liable for the expense. *See* 42 U.S.C. § 1395pp (identifying who is liable under what circumstances).

Medicare claims are initially adjudicated by a private contractor, *see* 42 U.S.C. § 1395ff(a)(1), and objections to the contractor's decision are subject to a multi-step appeal process. To start, parties who are denied reimbursement may ask the contractor to reevaluate its decision. *See id.* § 1395ff(a)(3). If the contractor still denies coverage, parties may seek review from a new, independent contractor. *See id.* § 1395ff(b)(1), (c). If the second contractor agrees with the first, parties may ask an ALJ to adjudicate the coverage decision. *See id.* § 1395ff(d)(1). If the ALJ also denies coverage, parties may appeal to the Medicare Appeals Council. *See id.* § 1395ff(d)(2).

The agency denied the claims at issue here at each level of review, culminating in the Council's affirmation of the denial of coverage. AR Vols. 1–63 at 3–4. Encompass then sought judicial review by suing the Secretary of the United States Department of Health and Human Services in this Court. *See generally* Compl. (Doc. 1). Both parties now move for summary judgment.

## II. LEGAL STANDARDS

In an action for judicial review of a Medicare claim denial, the district court sits as an appellate tribunal. *See* 42 U.S.C. § 405(g) (providing for judicial review of final decisions of the Commissioner of Social Security); 42 U.S.C. § 1395ff(b)(1)(A) (incorporating § 405(g) for Medicare). "[J]udicial review of the Secretary's decision regarding a claim for Medicare benefits is limited to whether there is substantial evidence to support the findings of the Secretary, and whether the correct legal standards were applied." *Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health & Hum. Servs.*, 468 F.3d 1347, 1350 (11th Cir. 2006) (cleaned up). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1280 (11th Cir. 2010). Summary judgment motions are the correct mechanism to resolve Medicare appeals in the district court, but the appropriate legal standard is supplied by 42 U.S.C. § 405(g), not Federal Rule of Civil Procedure 56. *Brinklys v. Johnson*, 175 F. Supp. 3d 1338, 1349 (M.D. Fla. 2016), *aff'd sub nom. Brinklys v. Sec'y, Dep't of Homeland Sec.*, 702 F. App'x 856 (11th Cir. 2017).

## III. DISCUSSION

In its motion for summary judgment, Encompass offers three arguments as to why the Court should vacate and remand the decisions of the Medicare Appeals Council. First,

5

Encompass argues that the Council incorrectly concluded that Encompass did not comply with 42 C.F.R. § 405.1112(b), which requires appellants to identify what parts of the ALJ decisions they disagree with and explain their reasons for disagreeing. Pl. MSJ at 75–87. Second, Encompass argues that even if it failed to comply with § 405.1112(b), the Council impermissibly treated Encompass differently than other providers by declining to offer a detailed analysis of Encompass's appeals. *Id.* at 87–90. Third, Encompass argues that the Council should have reversed the ALJ decisions for clear error because the ALJs applied legal standards not found in the text of the applicable regulations and did not assemble a complete administrative record. *Id.* at 90–97. All three arguments fail. After detecting no legal error in the agency's handling of the appeals, the Court also concludes that the agency decisions are supported by substantial evidence.

### A. Encompass Did not Explain Its Reasons for Disagreeing with the ALJs

Encompass did not comply with § 405.1112(b). That regulation provides that when a party requests the Council to review an adjudication:

> The request for review must identify the parts of the ALJ's or attorney adjudicator's action with which the party requesting review disagrees and explain why he or she disagrees with the ALJ's or attorney adjudicator's decision, dismissal, or other determination being appealed. For example, if the party requesting review believes that the ALJ's or attorney adjudicator's action is inconsistent with a statute, regulation, CMS Ruling, or other authority, the request for review should explain why the appellant believes the action is inconsistent with that authority.

6

If a request does not conform to this requirement, the Council will "adopt the ALJ's action without comment, unless the ALJ's decision or dismissal contains on its face a clear error of law." 67 Fed. Reg. 69312, 69336 (Nov. 15, 2002).

CMS promulgated this rule in 2002 because it was receiving numerous "requests for review stat[ing] only general reasons for appealing, such as 'I disagree with the ALJ's decision' or 'The decision is not supported by the evidence and is inconsistent with the law.'" *Id.* at 69335. Disposing of such appeals is "very time and labor intensive, including examination of aspects of the decision with which the party may not actually disagree." *Id.* Section 405.1112(b) addresses this problem by directing parties to explain what aspect of the decision they disagree with and why.

Encompass's requests for review took three forms. In most of the appeals, Encompass requested review because "[t]he beneficiary met the criteria for admission to the IRF and met medical complexity to require IRF." AR Vols. 1–2, 5, 20, 22–27, 30, 39–45, 47–48, 54–63 at 5; AR Vols. 21, 28–29 at 9; AR Vol. 33 at 10; AR Vols. 37–38 at 15. In a few others, Encompass averred that "[t]he beneficiary met Medicare criteria for admission to the IRF and we request the Appeals Board review the ALJ's decision." AR Vols. 3–4, 32 at 5; AR Vol. 31 at 9. And sometimes, Encompass instead posited that "[t]he beneficiary met Medicare criteria for admission to the IRF. The ALJ's decision did not take into account all of the testimony and the information provided in the medical record." AR

7

Vols. 34–36, 46, 49–50, 51A, 52–53 at 5.

These requests did not explain why Encompass disagreed with the ALJ decisions.[1] An appellant must offer a reason the ALJ erred, not just a conclusion that it did. That requirement is unambiguously outlined in § 405.1112(b), which provides that if a party believes that an ALJ decision contradicts a regulation, "the request for review should explain why the appellant believes the action is inconsistent with that authority."[2] Yet Encompass did not specify the content of its disagreement with the ALJs' decisions. Alleging that the beneficiaries met the eligibility criteria, that the beneficiaries "met medical complexity," *see, e.g.*, AR Vol. 1 at 5, or that an "ALJ's decision did not take into account all of the testimony and the information," *see, e.g.*, AR Vol. 34 at 5, does not explain what specific legal or factual error the ALJ has committed. Such requests amount to impermissibly conclusory statements that "[t]he decision[s] [were] not supported by the evidence and [were] inconsistent with the law." 67 Fed. Reg. at 69335.

Encompass resists this conclusion for two reasons. First, it points out that CMS

---

[1] The parties also dispute whether Encompass identified the parts of the ALJ decisions with which it disagreed. *Compare* Pl. MSJ at 75–78, *with* Def. MSJ at 11–15. But because § 405.1112(b) requires appellants to "identify the parts of the ALJ's . . . action with which the party requesting review disagrees *and* explain why he or she disagrees with the ALJ's . . . decision," Encompass's failure to explain its disagreement is dispositive.

[2] Because the Court concludes that this regulation was unambiguous, the Court need not address the alternative argument that the Council's actions are justified by *Auer* deference. *See Auer v. Robbins*, 519 U.S. 452 (1997); *see also Kisor v. Wilkie*, 588 U.S. 558, 573 (2019) (establishing that "the possibility of deference can arise only if a regulation is genuinely ambiguous").

8

regulations do not require appellants to file a brief along with their request for review. *See* 42 C.F.R. § 405.1120 (permitting but not mandating briefs). According to Encompass, requiring further elaboration of its disagreements with the ALJs under § 405.1112(b) would impose a briefing requirement by another name. *See* Pl. MSJ at 80. Second, Encompass argues that if its requests for review fail to satisfy § 405.1112(b), then Form DAB-101—the standard form used to appeal ALJ decisions—is potentially inadequate for its purpose, since it contains space for only four lines of text. *See id.* at 81.

 Neither objection succeeds. Section 405.1112(b) required Encompass to explain what factual or legal errors it believed had infected the ALJ decisions. Encompass could have flagged the substantive issues it now raises in a few words—for example, "the ALJ falsely assumed that beneficiaries are ineligible for IRF services if they are in a stable condition." A legal brief was not necessary to communicate such concerns. For the same reasons, Encompass likely could have used the four lines of text in Form DAB-101 to raise its objections to the ALJs' decisions. And even if four lines did not suffice, Form DAB-101 itself instructs appellants to "[a]ttach additional sheets if you need more space." *E.g.*, AR Vol. 1 at 16. More fundamentally, it is not evident that the format of Form DAB-101 should influence the interpretation of § 405.1112(b), and Encompass does not cite any authority that suggests it should.

## B. The Council's Application of § 405.1112(b) Was not Arbitrary or Capricious

It was not arbitrary and capricious for the Council to adopt the ALJ decisions without comment after concluding that Encompass did not comply with § 405.1112(b). The Administrative Procedure Act (APA) prohibits agencies from acting in a manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Encompass argues that it was treated differently from two other appellants whose cases were adjudicated more than a decade ago. *See In re All Care Home Health*, 2013 WL 7872031, (H.H.S. Apr. 16, 2013); *In re Jefferson Surgical Clinic, Inc.*, 2012 WL 4760802, (H.H.S. Sept. 4, 2012). Therefore, relying on cases holding that agencies "acted arbitrarily and capriciously by treating similarly situated" parties differently, *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1260 (11th Cir. 2007), Encompass concludes that the Council did not apply the correct legal standard to its appeals.

This chain of reasoning has some weak links. Encompass contends that the Council acted arbitrarily and capriciously even if it applied the correct legal standard, so long as the Council did not apply the correct legal standard in other, previous cases. Taken to its natural conclusion, Encompass's argument would forever excuse appellants from complying with any agency procedure, so long as the parties could find a single instance where the agency did not hew to its processes in the past.

But even if Encompass's logic is sound, its starting premise is flawed. Neither of Encompass's authorities show disparate treatment. In *All Care Home Health*, the appellant requested review in three cases because "[t]he facts of the case and the written brief were not given proper consideration in the decision making process. These charts concerning the same patients who have been paid different times by different judges. For them now not to be paid makes no sense." 2013 WL 7872031, at *1. The Council concluded that this request did not comply with § 405.1112(b). *Id.* The Council summarized the factual and procedural background of each appeal, then adopted the ALJs' decisions without analysis. *Id.* at *2–5. That is almost exactly what happened here. In each appeal, the Council briefly summarized the background of the case and then adopted the ALJ's decision. AR Vols. 1–63 at 3–4. On a per case basis, the Council spilled almost as much ink discussing the appeals here as it did on the appeals in *All Care Home Health*. *Compare* AR Vols. 1–63 at 3–4 (two pages each), *with All Care Home Health*, 2013 WL 7872031, at *1–6 (seven pages for three consolidated appeals). Encompass was similarly situated to All Care Home Health and was treated similarly.

In *Jefferson Surgical Clinic, Inc.*, the appellant was treated differently than Encompass because it was not similarly situated to Encompass. There, the request for review was as follows: "Worst telephone hearing that I have ever participated in. Please listen to the tape. ALJ was confused and rambling. Please re-consider." 2012 WL 4760802,

11

at *2. The Council noted that this request did not comply with § 405.1112(b). *Id.* at *2 n.3. Yet the Council found it necessary to "modif[y] the ALJ's decision to expand its reasoning," though it largely accepted the ALJ's conclusions. *Id.* at *1–4. That contrasts with Encompass's appeals, where the Council did not perceive a need to modify the ALJ's decision and therefore did not offer analysis of the ALJs' decisions before adopting them. *See* AR Vols. 1–63 at 3–4. The Council was not obliged to devote the same level of analysis for an ALJ decision that it adopted wholesale as it was for an ALJ decision that needed modification. It is not arbitrary and capricious to treat dissimilar cases dissimilarly, so Encompass's argument fails.

### C. The ALJ Decisions Did not Contain Clear Error

Next, Encompass argues that even if the Council properly limited its review to clear, facial errors, the ALJ decisions should be overturned. It identifies three putative examples of clear error. First, Encompass notes that in 23 cases, the ALJs mentioned that the patient was "stable" upon admission to the IRF. Pl. MSJ at 91–93 (collecting instances). According to Encompass, the ALJs clearly erred by relying on the patients' stability as a reason to deny coverage, even though the beneficiary eligibility criteria required patients to be "sufficiently stable at the time of admission to the IRF to be able to actively participate in the intensive rehabilitation therapy program." 42 C.F.R. § 412.622(a)(3)(iii) (2010). Second, it faults the ALJs in 39 cases for stating that the patients' medical conditions were insufficiently

"complex" to warrant IRF services, even though that word does not appear in the beneficiary eligibility criteria. Pl. MSJ at 93–94 (collecting instances). Third, Encompass argues that the ALJs failed to assemble a complete administrative record in eight of the cases. Pl. MSJ at 94–97. The first two arguments fail, and the third is waived.

### i.  The ALJ Decisions Did not Impose a 'Stability' Requirement

Start with the first argument. The beneficiary eligibility criteria are meant to limit IRF services to a particular kind of patient: someone who is healthy enough to engage with a rigorous therapy regimen, but who is unwell enough to need that regimen and require close medical supervision. "No legal authority appears to require that beneficiaries must have unstable vital signs and be in acute distress in order to need hospital-level rehabilitation." *In re Kaweah Delta Rehabilitation Hosp.*, 2009 WL 5788651, *5 (H.H.S. 2009). Patients must be "sufficiently stable at the time of admission to the IRF to be able to actively participate in the intensive rehabilitation therapy program." 42 C.F.R. § 412.622(a)(3)(iii) (2010). At the same time, if beneficiaries' condition was such that their "needs could . . . have been met" at a facility with a less intensive level of care, "that would justify non-coverage of care in an IRF." *In re Kaweah Delta Rehabilitation Hosp.*, 2009 WL 5788651, at *5. The medical condition must justify "the active and ongoing therapeutic intervention of multiple therapy disciplines," "at least 3 hours of therapy . . . per day at least 5 days per week," and close physician supervision in the form of "face-to-face visits with

the patient at least 3 days per week." 42 C.F.R. § 412.622(a)(3)(i)–(ii), (iv) (2010).

None of the ALJ decisions impermissibly imposed a "stability" requirement. The wording of the ALJ decisions varies from case to case, but each concludes "that [the patients'] rehabilitation needs and the monitoring of [their] medical conditions could have been safely met with a lower level of care." AR Vol. 3 at 25; *see also, e.g.*, AR Vol. 4 at 23 (same); AR Vol. 34 at 19 (same); AR Vol. 36 at 25 (same). Those conclusions reflect the regulatory desideratum that beneficiaries must need intensive therapy and close supervision to qualify for IRF coverage. *See* 42 C.F.R. § 412.622(a)(3)(i)–(ii), (iv) (2010). Encompass does not identify a single instance where an ALJ used "stability" as a *sine qua non* of eligibility. Instead, the decisions offer fulsome accounts of the patients' medical conditions, which sometimes included the fact that a particular medical condition (or combination of medical conditions) was "stable." It appears that Encompass simply accuses the ALJs of misapplying the law every time that a decision uses a cognate of the term "stable." But ALJs are not forbidden from considering the stability of a given medical condition in their overall assessment of the need for IRF services; they simply must not "*require* that beneficiaries must have unstable vital signs." *In re Kaweah Delta Rehabilitation Hosp.*, 2009 WL 5788651, at *5 (emphasis added). Each decision reflects an awareness that a patient must be "sufficiently stable" to participate in IRF services, 42 C.F.R. § 412.622(a)(3)(iii) (2010), while still recognizing that a patient with no medical need for intensive therapy and close

14

supervision cannot be reimbursed for such services, *id.* § 412.622(a)(3)(i)–(ii), (iv).

### ii. The ALJ Decisions Did not Impose a 'Complexity' Requirement

In much the same way, the ALJ decisions that used the word "complex" did not impose a legal standard separate from the beneficiary eligibility criteria. As Encompass concedes, "the term 'complexity' is sometimes used as a form of proverbial shorthand to describe qualified IRF patients." Pl. MSJ at 94. In other words, when a case presents insufficient complexity, that means that the patient's medical needs did not require IRF services. CMS has used the word in this sense in the pages of the Federal Register. *See* 74 Fed. Reg. at 39796 (observing that "the medical complexity of rehabilitation patients has increased over time"); *id.* at 39788 (explaining that "patients for whom IRF coverage was intended . . . require complex rehabilitation in a hospital environment"). So did Encompass in the very requests for review at issue in this case. *See, e.g.*, AR Vol. 1 at 5 ("The beneficiary met the criteria for admission to the IRF and met medical complexity to require IRF."); *see also* Pl. MSJ at 94 & n.16 (admitting this fact, but averring that Encompass's use of the word was "largely" reflective of the ALJs' usage). The ALJs were not obligated to avoid this term simply because it does not appear in the text of § 412.622, provided that their decisions were anchored in one or more of the beneficiary eligibility criteria. That was the case here. *See, e.g.*, AR Vol. 2 at 13–14 ("[T]he record does not support that the beneficiary's medical, rehabilitation, and nursing needs were of such complexity *that close*

15

*supervision was required at the time of admission* to the IRF." (emphasis added)); *see also* 42 C.F.R. § 412.622(a)(3)(iv) (2010) (physician supervision requirement).

### iii. Encompass Waived Its Argument That the Administrative Record Is Incomplete

Finally, Encompass speculates that the administrative record in eight cases is incomplete. Encompass argues that the medical records for these cases are relatively short and that some of the statements made by the Medicare contractors and the ALJs assume the existence of documents not included in the record. *See* Pl. Reply (Doc. 62) at 15–16; *but see also* Def. Reply (Doc. 63) at 7–8 (disagreeing with Encompass's interpretation of these statements). Though it never provides the medical documents that it says are missing from the record,³ Encompass concludes that the ALJs failed to compile a complete record and contends that the ALJs' alleged failures amount to *per se* reversible error.

This argument is waived. "Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency." *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1254 (11th Cir. 2007) (quotation omitted). But Encompass did not argue that the administrative record was incomplete before the ALJs. Nor did it raise the issue in any of its requests for review. *Cf. Chipman v. Shalala*, 90 F.3d 421, 423 (10th Cir. 1996) ("Plaintiff did not

---

³ As the party responsible for submitting the allegedly missing documentation, *see* 42 C.F.R. § 424.5(a)(6), Encompass presumably has access to the specific records that it believes are missing for each patient.

16

present his remaining two arguments on appeal to either the ALJ or the Appeals Council. Accordingly, he has waived those points and we decline to address them."). Encompass does not argue otherwise. Instead, it avers that it could not waive the argument because the ALJ has "an independent obligation . . . to compile a *complete* administrative record." Encompass Reply at 16. It also refers to the Council's practice of remanding decisions *sua sponte* if the record is incomplete. *Id.* at 16–17 (compiling cases). Those arguments conflate two different propositions. It may be the case that the ALJ and the Council had a duty to comb through the record for missing documents. Yet that does not mean that Encompass is released from ordinary waiver rules in proceedings before this Court.

### D. The ALJ Decisions Are Supported by Substantial Evidence

Although Encompass averred that the agency's final decisions "are not supported by substantial evidence" in its complaint, Compl. ¶¶ 42–44 (Count I), it does not argue that the decisions are unsupported by substantial evidence in its motion for summary judgment. *See generally* Pl. MSJ at 73–97 (offering only legal arguments for remand).[4] Secretary Becerra moves for summary judgment on this issue, *see* Def. MSJ at 30–100, and Encompass does not contest the Secretary's arguments in its response, electing to focus entirely on the legal arguments. *See* Pl. Reply at 1–17.

---

[4] Encompass offers short factual summaries of each case in its background section, but none of these summaries substantively engage with the analysis offered by the ALJ. *See* Pl. MSJ at 9–72.

Having reviewed the briefing, the ALJ decisions, and the record, the Court finds that substantial evidence supports the final agency decisions. This is a low bar. Substantial evidence exists so long as "a reasonable mind might accept [the agency's] conclusions," "even if the evidence appears to weigh against the decision." *Roberts Sand Co., LLLP v. Sec'y of Lab.*, 568 F. App'x 758, 759 (11th Cir. 2014) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). Here, each ALJ concluded that the beneficiary eligibility criteria were not satisfied after providing a detailed summary of the relevant patient's medical history, including multiple medical factors that indicated that IRF services were not necessary.[5] Encompass does not identify any reason that this evidence is insufficient in any case, and the Court finds none.

## IV. CONCLUSION

Accordingly, the following is **ORDERED:**

---

[5] *See* AR Vol. 1 at 24–30; AR Vol. 2 at 25–32; AR Vol. 3 at 35–45; AR Vol. 4 at 35–45; AR Vol. 5 at 26–36; AR Vol. 6 at 27–36; AR Vol. 7 at 26–34; AR Vol. 8 at 28–38; AR Vol. 9 at 26–34; AR Vol. 10 at 26–34; AR Vol. 11 at 28–38; AR Vol. 12 at 29–40; AR Vol. 13 at 24–30; AR Vol. 14 at 25–32; AR Vol. 15 at 26–34; AR Vol. 16 at 25–32; AR Vol. 17 at 26–34; AR Vol. 18 at 27–36; AR Vol. 19 at 26–34; AR Vol. 20 at 25–32; AR Vol. 21 at 45–53; AR Vol. 22 at 27–36; AR Vol. 23 at 26–34; AR Vol. 24 at 26–34; AR Vol. 25 at 27–36; AR Vol. 26 at 35–44; AR Vol. 27 at 42–50; AR Vol. 28 at 52–61; AR Vol. 29 at 45–55; AR Vol. 30 at 27–36; AR Vol. 31 at 47–64; AR Vol. 32 at 41–57; AR Vol. 33 at 36–45; AR Vol. 34 at 37–48; AR Vol. 35 at 36–47; AR Vol. 36 at 36–47; AR Vol. 37 at 42–49; AR Vol. 38 at 42–49; AR Vol. 39 at 26–34; AR Vol. 40 at 27–36; AR Vol. 41 at 15–24; AR Vol. 42 at 29–37; AR Vol. 43 at 26–34; AR Vol. 44 at 33–45; AR Vol. 45 at 35–49; AR Vol. 46 at 29–38; AR Vol. 47 at 32–42; AR Vol. 48 at 35–48; AR Vol. 49 at 31–43; AR Vol. 50 at 31–43; AR Vol. 51 at 35–48; AR Vol. 52 at 33–44; AR Vol. 53 at 33–45; AR Vol. 54 at 39–56; AR Vol. 55 at 34–45; AR Vol. 56 at 28–36; AR Vol. 57 at 28–40; AR Vol. 58 at 27–35; AR Vol. 59 at 32–42; AR Vol. 60 at 30–38; AR Vol. 61 at 30–38; AR Vol. 62 at 33–44; AR Vol. 63 at 29–36.

1. Encompass Health Rehabilitation Hospital of Largo, LLC, and Encompass Health Rehabilitation Hospital of Sarasota, LLC's motion for summary judgment (Doc. 53) is **DENIED**.

2. Secretary Becerra's motion for summary judgment (Doc. 61) is **GRANTED**.

3. The Clerk is directed to **ENTER JUDGMENT** in favor of Secretary Becerra, which shall read "The final agency decisions are affirmed," **TERMINATE** any pending motions and deadlines, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on September 11, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**\*

---

\* Signed by Judge William F. Jung to expedite the resolution of this action. This case remains assigned to Judge Kathryn Kimball Mizelle.